*Cedell v. Farmers Ins. Co. of Wash.*
Dissent by Alexander, J.

No. 85366-5

ALEXANDER, J.[*] (dissenting)—Although I agree with the majority that we should remand to the trial court for "further proceedings," I disagree with its determination that these proceedings should be conducted consistent with the majority opinion. Majority at 2. I reach that conclusion because the majority incorrectly determines that an insurer, like Farmers Insurance Company, is not entitled to the protections provided by the statutory attorney client privilege in a bad faith action by a first party insured. That, of course, is the position advanced by the petitioner here, Bruce Cedell. As support for his petition, Cedell cited a statement by the Court of Appeals in *Barry v. USAA*, 98 Wn. App. 199, 204, 989 P.2d 1172 (1999), that "in bad faith actions brought by an insured against an insurer under the terms of an insurance contract[,] . . . communications between the insurer and the attorney are not privileged" with respect to the insured.

Farmers correctly observes that this statement was dictum and it points out that the *Barry* court, relying on *Escalante v. Sentry Insurance Co.*, 49 Wn. App. 375, 743 P.2d 832 (1987), *overruled on other grounds by Ellwein v. Hartford Accident & Indem. Co.*, 142 Wn.2d 766, 15 P.3d 640 (2001), *overruled by Smith v. Safeco Ins. Co.*, 150

---

[*]Justice Gerry L. Alexander is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

Wn.2d 478, 78 P.3d 1274 (2003), held that the attorney-client privilege did apply in the context of that case. Unlike the instant case, *Escalante* and *Barry* involved underinsured motorist (UIM) claims. But since this pair of UIM cases constitute the only Washington authority directly bearing on the question of the applicability of the attorney-client privilege in a first-party bad faith action, my analysis appropriately begins with a discussion of these cases.

In *Escalante*, the parents of a deceased automobile passenger brought a bad faith action against the UIM insurer of the automobile. In the course of litigating their claim, the parents sought materials relating to the insurer's evaluation of the claim, arguing that the attorney-client privilege did not protect information relevant to a bad faith claim. *Escalante*, 49 Wn. App. at 393. The Court of Appeals rejected this argument, albeit implicitly, recognizing the attorney-privilege codified by RCW 5.60.060(2). The court indicated that the privilege could be overcome by "a showing of a foundation in fact for the charge of civil fraud." *Id.* at 394. It did not, however, hold that the privilege is inapplicable in a bad faith action.

In *Barry*, an insured sued her insurance company, USAA, for bad faith for its failure to pay a UIM claim. During discovery, the insured requested reports from the claims adjuster and correspondence from the attorney who handled the claim. After initially ordering USAA to submit the documents for in camera review, the trial court granted USAA's motion for reconsideration and denied the insured's request to inspect the claims file, concluding that the insured had failed to establish sufficient wrongful

conduct to invoke the fraud exception to the attorney-client privilege.

On appeal, the Court of Appeals examined whether any of the documents the insured was seeking were privileged. The court began by making the observation set forth above that "it is a well-established principle in bad faith actions brought by an insured against an insurer . . . that communications between the insurer and the attorney are not privileged with respect to the insured." *Barry*, 98 Wn. App. at 204 (citing *Baker v. CNA Ins. Co.*, 123 F.R.D. 322, 326 (D. Mont. 1988); *Silva v. Fire Ins. Exch.*, 112 F.R.D. 699 (D. Mont. 1986)). The *Barry* court endorsed the rule articulated in *Silva* that "'[t]he time-worn claims of work product and attorney-client privilege cannot be invoked to the insurance company's benefit where the only issue in the case is whether the company breached its duty of good faith in processing the insured's claim.'" *Id.* (quoting *Silva*, 112 F.R.D. at 699-700). The court went on to say, however, that there was "good reason" to treat first-party bad faith actions involving the processing of UIM claims differently than other first-party claims. *Id.* It observed that "UIM carriers stand in the shoes of the underinsured motorist/tortfeasor to the extent of the carrier's policy limits" and, consequently, are "entitled to pursue all the defenses against the UIM claimant that could have been asserted by the tortfeasor." *Id.* at 205 (citing *Dayton v. Farmers Ins. Group*, 124 Wn.2d 277, 281, 876 P.2d 896 (1994)). "Because the provision of UIM coverage is by nature adversarial," the court explained, "an inevitable conflict exists between the UIM carrier and the UIM insured." *Id.* (citing *Fisher v. Allstate Ins. Co.*, 136 Wn.2d 240, 249, 961 P.2d 350 (1998)). The court

3

concluded that the "friction between this adversarial relationship and the traditional fiduciary relationship of an insured and an insurer" entitled the UIM insurer to the protections of the attorney-client privilege. *Id.*

The case before us is obviously distinguishable from *Escalante* and *Barry* because it did not arise in a UIM context. It is essentially akin to *Silva*, which involved a claim against an insurer for the loss of a house in a fire. *See Silva*, 112 F.R.D. at 699 ( "The instant discovery dispute arises out of plaintiff's request that defendant produce its complete claims file concerning her fire insurance claim."). In *Silva*, the court ruled that "a plaintiff in a first-party bad faith action is entitled to discover the entire claims file kept by the insurer." *Id.* (citing *In re Bergeson*, 112 F.R.D. 692, 697 (D. Mont. 1986)). The court went on to hold that "the general rule in cases of this nature should be that the plaintiff is absolutely entitled to discovery of the claims file." *Id.* at 700. Under that general rule, Farmers would not be able invoke the attorney-client privilege to its benefit.

In our judgment, however, the distinction between UIM and non-UIM cases should not be dispositive. The rule endorsed by the Court of Appeals in *Barry* is based on the notion that an insurer in a non-UIM situation is a true fiduciary. *See Barry*, 98 Wn. App. at 205. But this court has repeatedly held that the relationship between insurer and insured is not a true fiduciary relationship. *See, e.g.*, *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 130 n.3, 196 P.3d 664 (2008); *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 389, 823 P.2d 499 (1992). Instead, a non-UIM, first-

4

party insurer has merely a quasi-fiduciary relationship with an insured. *Van Noy v. State Farm Mut. Auto. Ins. Co.*, 142 Wn.2d 784, 793, 16 P.3d 574 (2001). As the Supreme Court of Montana said in *Palmer ex rel. Diacon v. Farmers Insurance Exchange*, 261 Mont. 91, 861 P.2d 895, 906 (1993), "The nature of the relationship, not the nature of the cause of action, controls whether communications between attorney and client can be discovered." Unlike a true fiduciary, an insurer is not required to put the interests of the insured ahead of its own. *Onvia*, 165 Wn.2d at 130 n.3. Rather, it must give the interests of the insured *equal* consideration. *Id.* Indeed, an insurance company also has a duty to its shareholders and other policyholders "'not to dissipate its reserves through the payment of meritless claims.'" *Bosetti v. U.S. Life Ins. Co. of City of N.Y.*, 175 Cal. App. 4th 1208, 1237 n.20, 96 Cal. Rptr. 3d 744 (2009) (quoting *Jordan v. Allstate Ins. Co.*, 148 Cal. App. 4th 1062, 1072, 56 Cal. Rptr. 3d 312 (2007)). Thus, the "friction" that the court discussed in *Barry* is not limited to the UIM context. Given that an insurance company is entitled to give equal consideration to its own interests, it follows that it should be entitled to consult with counsel regarding its obligations under its policies. In our view, such communications should be protected by the attorney-client privilege in the absence of an applicable exception, such as the fraud exception discussed below.

As the Court of Appeals properly observed, "while an attorney's impressions may be relevant to a bad faith claim, an automatic removal of attorney-client privilege would frustrate the purpose of the attorney-client privilege without cause." *Cedell*, 157 Wn.

App. at 275. Affording insurance companies the benefit of the attorney-client privilege will not, as has been suggested, enable the companies to conceal their entire claims files merely by employing attorneys as claims adjusters. In the present case, it is only the advice given by Hall to Farmers in his capacity as an attorney that is protected by the attorney-client privilege. *See* RCW 5.60.060(2)(a) ("communications made . . . in the course of professional employment"). In sum, we should hold that an insurer is entitled to the attorney-client privilege in a bad faith action by a first-party insured in the absence of an applicable exception to the privilege.

Here, Cedell claims the fraud exception. The question, therefore, is this: does the fraud exception to the attorney-client privilege require a party seeking disclosure to show actual fraud or is a factual showing of bad faith sufficient? In *Escalante*, the court observed that the fraud exception "is usually invoked only upon a prima facie showing of bad faith tantamount to civil fraud." *Escalante*, 49 Wn. App. at 394 (citing *United Servs. Auto. Ass'n v. Werley*, 526 P.2d 28 (Alaska 1974)). However, because of the proof problems inherent in requiring a prima facie showing at the discovery stage, the court held that "the privilege may be overcome by a showing of a foundation in fact for the charge of civil fraud." *Id.* (citing *Caldwell v. District Court*, 644 P.2d 26, 33 (Colo. 1982)). *Escalante* further held that this showing could be accomplished after an in camera inspection of the relevant documents. The *Escalante* court adopted the two-step process developed by the Supreme Court of Colorado in *Caldwell* according to which a trial court first determines whether the party requesting in camera review has

6

made a factual showing adequate to support a good faith belief by a reasonable person that "'wrongful conduct'" sufficient to invoke the fraud exception has occurred, and if so, after subjecting the documents to in camera review, determines whether there is a "foundation in fact for the charge of civil fraud." *Id.* (quoting *Caldwell*, 644 P.2d at 33).

Unfortunately, the court in *Escalante* did not define the precise contours of "wrongful conduct sufficient to invoke the fraud exception" or "bad faith tantamount to civil fraud."[1]  In *Barry*, however, the Court of Appeals seemingly confined the fraud exception to actual fraud.  After reviewing the plaintiff's factual allegations, the court said, "While these allegations may be sufficiently supported by the record to establish a prima facie case of bad faith insurance . . . , they do not, in and of themselves, constitute a good faith belief that USAA committed fraud."  *Barry*, 98 Wn. App. at 206-07.  Accordingly, it held that the trial court's refusal to inspect the privileged documents in camera was not an abuse of discretion.  *But see Seattle Nw. Sec. Corp. v. SDG Holding Co.,* 61 Wn. App. 725, 741, 812 P.2d 488 (1991) (remanding "for a hearing to determine whether there is sufficient basis for good faith belief by a reasonable person that SDG may have acted in bad faith," and directing the trial court to "order an in

---

[1]Notably, the authorities the court cited in *Escalante*, namely *Werley* and *Caldwell*, acknowledged that there was a division of opinion in cases as to whether the fraud exception embraced bad faith falling short of actual fraud.  *See Caldwell*, 644 P.2d at 32 n.5 ("Because the present case involves a claim of fraud, we need not and do not reach the question of whether this exception to the attorney-client privilege extends to other forms of tortious conduct."); *Werley*, 526 P.2d at 32 n.12 ("In the case at bar it is unnecessary for us to choose between ['civil fraud' and 'tort' because] we find the alleged conduct of the petitioner to be both 'fraudulent' and 'tortious'."); *see also* 2 Edward J. Imwinkelried, The New Wigmore:  A Treatise on Evidence: Evidentiary Privileges § 6.13.2(d)(1), at 1170 (2d ed. 2010) ("There is a split of authority over the breadth of the exception.").

camera inspection of the documents" if it "finds that such a preliminary showing has been made").

The Court of Appeals' decision below is consistent with *Barry*. After identifying the "distinct" elements of fraud and bad faith, the court stated that "[t]o qualify for the fraud exception to the attorney-client privilege, the plaintiff must show fraud, as opposed to just bad faith." *Cedell*, 157 Wn. App. at 278. It noted that in the present case,

> The trial court found that (1) Farmers made a one-time offer of $30,000 with an acceptance period that fell when Hall was out of town, (2) Farmers threatened to deny Cedell coverage without explanation, and (3) the damage to the house was eventually determined to be far more than Farmers' $30,000 offer.

*Id.* Because there was "no evidence, for example, that Farmers knowingly misrepresented a material fact or that Cedell justifiably relied on a misrepresented material fact to his detriment," the Court of Appeals held that the trial court had abused its discretion by ordering an in camera review. *Id.*

The Court of Appeals' holding is also consistent with the view of the majority of jurisdictions that limit the exception to fraud. *See* 2 Edward J. Imwinkelried, The New Wigmore: A Treatise on Evidence: Evidentiary Privileges § 6.13.2(d)(1), at 1171-75 (2d ed. 2010). In *Freedom Trust v. Chubb Group of Insurance Companies*, 38 F. Supp. 2d 1170, 1173 (C.D. Cal. 1999), for example, the court observed that "bad faith denial of insurance coverage is not inherently similar to fraud" because it "need not implicate false or misleading statements by the insurer. . . . The gravamen of fraud, however, is falsity." Therefore, the court concluded that "there is no persuasive reason to include

bad faith in the fraud exception to the lawyer-client privilege." *Id.* A substantial minority of jurisdictions, however, recognize a broader version of the exception encompassing communications intended to further any crime or tort. 2 Imwinkelried, *supra*, at 1174. The Ohio Supreme Court extended the exception to documents demonstrating an insurer's bad faith in denying insurance coverage, stating that "'[d]ocuments . . . showing the lack of a good faith effort to settle . . . are wholly unworthy of the protections afforded by any claimed privilege.'" *Boone v. Vanliner Ins. Co.*, 91 Ohio St. 3d 209, 2001-Ohio-27, 744 N.E.2d 154, 157 (2001) (quoting *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St. 3d 638, 1994-Ohio-324, 635 N.E.2d 331, 349 (1994)). Such documents, moreover, are discoverable without the sort of preliminary showing of wrongful conduct required by *Escalante*. Rather, "in an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage."[2] *Id.* at 158.

---

[2]Amicus Washington State Association for Justice Foundation (WSAJF) urges this court to adopt such a bright-line rule. *See* WSAJF Amicus Curiae Br. at 19. As Farmers points out, however, *Boone* was superseded by statute. Resp't's Answer to WSAJF Amicus Curiae Br. at 17 n.5. In 2006, the Ohio General Assembly amended Ohio Revised Code Annotated § 2317.02(A) to require a party seeking in camera review to make a prima facie showing of bad faith, fraud, or criminal misconduct, similar to the preliminary showing of "wrongful conduct" under step one of *Escalante*. *See* Ohio Rev. Code Ann. § 2317.02(A)(2). The General Assembly declared, "[T]he attorney-client privilege is a substantial right and . . . it is the public policy of Ohio that all communications between an attorney and a client in that relation are worthy of the protection of privilege, and further that where it is alleged that the attorney aided or furthered an ongoing or future commission of insurance bad faith by the client, that the party seeking waiver of the privilege must make a prima facie showing that the privilege should be waived and the court should conduct an in camera inspection of disputed communications. The common law established in *Boone v. Vanliner Ins. Co.* (2001)*,* 91

9

This court has said, "Because the [attorney-client] privilege sometimes results in the exclusion of evidence otherwise relevant and material, and may thus be contrary to the philosophy that justice can be achieved only with the fullest disclosure of the facts, the privilege is not absolute; rather, it is limited to the purpose for which it exists." *Dietz v. John Doe*, 131 Wn.2d 835, 843, 935 P.2d 611 (1997) (citing *Dike v. Dike*, 75 Wn.2d 1, 11, 448 P.2d 490 (1968)). The attorney-client privilege exists in order to allow the client to communicate freely with an attorney without fear of compulsory discovery. Although this purpose is served by protecting communications regarding prior wrongful conduct, the privilege should not encourage the perpetration of such conduct. Engaging an attorney in order to further the bad faith denial of insurance coverage represents an abuse of the attorney-client privilege. We should hold, therefore, that communications related to an attorney's aiding an ongoing or future commission of bad faith by an insurer are discoverable if an in camera inspection reveals a foundation in fact of such wrongful conduct, provided that the party seeking disclosure first makes a factual showing adequate to support a good faith belief by a reasonable person that such conduct has occurred.[3]

---

Ohio St. 3d 209, *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St. 3d 638, and *Peyko v. Frederick* (1986), 25 Ohio St.3d 164, [495 N.E.2d 918,] is modified accordingly to provide for judicial review regarding the privilege." 2006 Ohio Laws 2292, § 6 (Am. Sub. S.B. 117).

[3]The holding I advance is similar to that which is dictated in Ohio due to a law passed by that state's general assembly in response to *Boone*. Ohio Revised Code Annotated § 2317.02 now provides that an attorney shall not testify concerning a communication made to the attorney by a client or the attorney's advice to a client "except that if the client is an insurance company, the attorney may be compelled to testify, *subject to an in camera inspection by a court*, about communications . . . *related to the attorney's aiding or furthering* an *ongoing or future* commission of *bad faith* by the

In the present case, the trial court properly found that the facts alleged by Cedell supported a good faith belief that wrongful conduct sufficient to invoke the fraud exception has occurred; however, it did not meaningfully perform the second step of *Escalante* and subject Farmers' claims file to in camera review, basing its order compelling discovery of the entire file on the erroneous ground that an insurer is not entitled to the attorney-client privilege in a first-party bad faith action. I emphasize the points that in camera inspection is critical and the attorney-client privilege is not defeated merely by a claim of bad faith.

In sum, we should affirm the Court of Appeals' holding that an insurer may invoke the attorney-client privilege in a bad faith action by a first-party insured, but reverse its holding that the fraud exception to the attorney-client privilege is limited to "actual fraud." As I have indicated, the exception applies to communications related to an attorney's aiding an ongoing or future commission of bad faith by an insurer. We should also affirm the Court of Appeals' reversal of sanctions and remand this matter to the judge who presided over this case with instructions to conduct an in camera inspection of Farmers' claim file consistent with this dissent.

---

client, if the party seeking disclosure of the communications has made a *prima facie showing of bad faith*, fraud, or criminal misconduct by the client." Ohio Rev. Code Ann. § 2317.02(A)(2) (West 2011) (emphasis added). In my judgment, this approach strikes the proper balance between the principle that justice is best achieved through the full disclosure of the facts and the important policy goals embodied by the attorney-client privilege.

No. 85366-5

AUTHOR:

Gerry L. Alexander, Justice Pro
Tem

WE CONCUR:

Chief Justice Barbara A. Madsen

Justice Susan Owens

Justice James M. Johnson